The final case on calendar for argument today is Soderholm Sales & Leasing v. BYD Motors. Good morning, Your Honours. Good morning. It pleases the Court, Christian Adams appearing on behalf of Appellant BYD Motors. With the Court's permission, I would like to reserve ten minutes for any necessary rebuttal. All right. This appeal involves claims by a motor vehicle distributor against a manufacturer for statutory damages under the Hawaii Motor Vehicle Industry Licensing Act, or HMVILA as it's referred to throughout this case. None of the findings and conclusions by the District Court regarding liability are contested on this appeal. Our appeal only raises issues of statutory interpretation regarding the District Court's award of statutory damages under the relevant statute, HRS 437-58G. I'd like to use my time to focus on three main points here today. First of which is statutory damages under HRS 437-58G do not apply to an ineffective termination or attempt to terminate the franchise. The District Court in this case awarded Soderholm Sales & Leasing, or SSLI, statutory damages of approximately $1.3 million under HRS 437-58G for its capital investment in the franchise. The District Court calculated this amount by taking SSLI's total income from its 17 other franchises in 2018 and 2019 and apportioning that amount to the seven months during which the Court found BYD, my client, the appellant, to have acted in bad faith. The language of HRS 437-58G makes it clear that statutory damages only apply upon, quote, the termination, discontinuation, cancellation, or failure to renew the franchise agreement by a manufacturer or distributor without good cause and good faith. So, counsel, are you making the argument that the Court did not find bad faith on the part of BYD? No, not at all, Your Honor. I'm making the argument that there was no bad faith termination of the franchise agreement. The Court made three separate findings that I think are very important to this argument. There was an initial attempted termination of the agreement, which occurred in September of 2018. There was the actual termination of the agreement that occurred in January 20, 2021. Unrelated to both of those, there was a period of bad faith where my client did not respond to communications from the other side, and that was from August 22, 2018 through February 28, 2021. As I read your position, you're saying that may be a breach of the contract. It's just not the type of breach that gives rise to the statutory damages. That's exactly right, Your Honor. So, again, we are not challenging that finding. We understand that's what the Court found, that that was that period of bad faith. However, the statute does not – I just want to understand your argument. So you're saying even though there was bad faith, there was not bad faith in conjunction with the termination of the franchise? Correct. For the first initial attempted termination of the franchise, that was rescinded. Because there was no termination. Right. The Court specifically found that it was rescinded and there was no termination, so that certainly couldn't have been part of that finding. The ultimate termination of the franchise, which, again, occurred not until January 20, 2021. But there ultimately was a termination. Agreed, and that was found to be no bad faith attached to it, was not in bad faith, was not challenged, and was not appealed, the ultimate termination. That was not part of the bad faith finding or any of the conduct that came – Because for that one, your client followed the Hawaii law, right? Exactly. They followed it to a T. It was not challenged. It could have been challenged before the agency. It could have been challenged before the Court, and it was not. That was not challenged at all. That finding is before this Court, unchallenged and unappealed. So the real question before this Court, and just to be clear, Your Honor, there was a finding of bad faith for our lack of response to SSLI. You stopped dealing with SSLI. Agreed, and during this period, there was a period of bad faith. However, our key point is that the statute does not provide for statutory damages if they are not related to a bad faith termination. But how is it not related, though? There is an entire course of conduct that culminates in a termination. Why isn't that entire course of conduct part of the termination? Because it wasn't related to the termination at all. Well, wasn't it just a discontinuation of the dealings or what the contract would have been? I'm sorry, Your Honor. Why wasn't it a discontinuation of the contract if they stopped responding, stopped doing anything under it? Because it wasn't, Your Honor. We still have – the District Court specifically found that the contract remained in effect and in place through the ultimate termination. We had obligations under it, and they had obligations under it. For example, we could not then go and find another dealer. We could not sell any other vehicles in the state of Hawaii. We were bound to that contract. That contract remained in effect through the valid – What is a discontinuation of the contract under the statute? Discontinuation of – finality, finality. It's very clear from the statute that, again, the precise language is the termination, discontinuation, cancellation, or failure to renew the franchise agreement or the contract. Tied to those, which I'll get to in my next point, is to support that, the statute also provides how you determine the fair market value or how you determine the valuation under the statute when a discontinuation, termination, cancellation, or failure to renew happens. And it is related to your notice to terminate or the day before – or the date of termination or the day before the notice, whichever is greater for the franchisee. You're saying they could not have obtained statutory damages. Could they have obtained some other damages, contractual damages? Absolutely, and the court said as much. The court said as much. So for anything short of an actual termination in bad faith, they are entitled to their actual damages. The court found as much. We're not challenging that. They didn't prove that at trial. They didn't prove any actual damages at all related to the bad faith conduct related to the agreement. So that is our point. We're not saying that they – this isn't us parsing the statute and parsing words and saying they weren't entitled to anything. Anything short of an actual termination in bad faith, which would have entitled them to statutory damages, entitles them to actual damages. They didn't prove any. They didn't prove any actual damages at trial. Had they proven any actual damages at trial, we would be on the hook for that. That is very clear. And so we are not trying to say that they wouldn't have any relief whatsoever. They would have your standard common law damages. And that is the precise purpose of this statute is 43758G provides this provision for statutory damages connected. Yes, Your Honor. I was going to ask a question. Would you agree that the district court concluded that SSLI was entitled to statutory damages premised on BYD's unsuccessful attempt to terminate the agreement during the period from August 22, 2018, to February 28, 2019? Do you agree that that was the district court's finding? No. Well, yes, we agree that that is – Is that what the district court found? Yes. Okay. So why was that not consistent with the statute? Because the agreement remained in effect and the agreement had not been terminated. So the statute specifically provides there must be an actual termination or end to the relationship to provide – to entitle them to statutory damages. If that is done, the statute then says there are two dates. Okay. So you're saying that it was not consistent with the statute for the court to rely on the unsuccessful attempt as a basis to award bad faith damages? That is correct, Your Honor. It has to be an actual termination. I'm just trying to understand your argument. It has to be an actual termination in accordance with the law? If it's in accordance with the law, how can it be bad faith? No, it has to be an actual termination in bad faith. Had the court determined that the original termination affected a termination of the agreement in bad faith, they're entitled to statutory damages. Had the court determined that the ultimate termination was in bad faith, they would have been entitled to statutory damages. What I'm not understanding is what – the district court was talking about what was going on in between, which was that, as I understand it, the relationship ceased. And that was what the district court was concerned about? The district court found that there was, again, a period from August 22, 2018 to February 28, 2019, where my client was not responsive to the franchisee and, therefore, was found to be in bad faith. Coupled with that, the court also found that the franchise agreement continued on. It continued on well past that. Within that – I'm just looking at the timeline here. There was a period where your client said, we intend to terminate that. The other side said, well, wait a minute. You can't do that without following the procedures. Then fairly quickly your client said, okay, we're not doing that. And then you eventually proceeded to follow the procedures that were required. But you said we're not terminating, but then you stopped dealing with them, right? Isn't that essentially what happened? From a very high standpoint, yes, Your Honor. I think both sides stopped dealing with each other. Why isn't that a discontinuation? Regardless of how the district court characterized it, if we don't accept that characterization and say that's a discontinuation, what's wrong with that conclusion? What is wrong with the conclusion that it was a – Discontinuation of the contract. Again, our position is that that is inconsistent with the statute. The statute makes clear – if you read the statute as to discontinuation, termination, end of the contract, it specifically relates to an end of the relationship and end of the agreement. The district court found that specifically not to be the case. I'm saying we are not bound by the district court's finding on that. We can disagree because that's an interpretation of the statute, which we reviewed de novo. So if we disagree with the district court's position that that contract continued, then do you lose on this point? No. Well, if the court makes that determination, I understand they're entitled to do that. No. But if we do – We still – Let me ask – I'm trying to figure out what your position is. If we disagree with the district court and we say that the bad faith conduct resulted in a discontinuation of the contract, do you lose? No. We do not lose the appeal, Your Honor, because at that point, if the court were to determine that, you would have to move on to damages. And the damage portion requires them to – again, per the statute. That's a different issue. The issue is whether – at that point, they would be entitled to statutory damages under the law. And then you would move to whether or not the damages were properly calculated. Correct, Your Honor. Okay. That is correct, Your Honor. And again – Why don't you address that? I'm going over, so I will touch on this very briefly. And this matter has been extensively briefed by both sides. Right. So I will try to be brief. The way that the district court fashioned this is they took the total income or total revenue from the franchise unrelated to my client's franchise. So 18 total franchises. My client's franchise was basically worthless. But when you talk about a franchise, you're talking about the franchise for different brands of cars. Is that correct? Buses. Mainly buses. We're discussing mainly buses here. There's some vans and some other – but 18 different lines of vehicles, let's just call it. My client's buses, that franchise was worthless. They never sold a single bus. They incurred $300,000 in costs. Costs grossly outweighed. No sales throughout the entire thing, essentially. So no value to it whatsoever. The court took the value of the other 17 businesses and the income from that unrelated to my client and apportioned that over the court's determined time of bad faith. That is completely inconsistent with the statute and is not permitted under any circumstances. The statute clearly says you pick one of two dates and you value the going value of the business, and those are your damages. I think the point I just made is not in dispute. The statute says the going value of the business at one of those two dates. That depends on what your definition of business is. Is the business the only franchise at issue, or is the business all of the franchises? So that kind of begs the question. That is my exact point, Your Honor, and that is what we briefed. So common sense interpretation of the statute and practicality of that. Our position is the business is, of course, our business because that's what— Well, what case supports that argument, the argument that in computing statutory damages, the definition of business is the business, the sole business that's at issue and not the entire business of the company? What case supports that theory? The basic statutory interpretation cases that we've cited, Your Honor. There is no case on point that defines that. Right, and that's the crucial issue. What is business? What's the definition of business? Again, that is absolutely correct, Your Honor, and I certainly understand where the court is coming from. Our point on that is the other businesses were very profitable. So our business, my client's business, was operating at a deficit, was worthless. The other businesses were highly profitable, had been profitable before, were profitable after, actually more profitable. What's our standard of review on that in reviewing how the district court defined business? What's our standard review? I think the application interpretation of the statute, I think, is the legal side is de novo. The specific findings on the factual side, I think, is the business. From a damages perspective, why would it make sense to give the plaintiff this big dollar amount that's the full value of their business? It makes no sense, Your Honor, and that is our entire point, is that you are calculating the money they've already earned on other businesses unrelated to us and then holding that as damages against us. The statute says for the dealer's capital investment, which shall include the going value of the business, which you would think would fairly imply that particular franchise relationship and not everything else they might be doing. That is exactly our point, Your Honor, and that's what we've briefed. Is this statute unique to Hawaii or is this a general state? No, it is unique to Hawaii. There are other statutes around the country that are companion statutes, but it is very unique to Hawaii, particularly given geography and how we operate as a business. So it is unique to Hawaii, but there are other companion statutes out there. Very briefly, if I can touch on my third point, I will be very brief. The final point, so, again, first point, our termination and what the definition of that is. Second point, what business is being referred to in the statute and what that is. I think we've covered all that. The third point is the district court also awarded the purchase price for various SUVs and a forklift that were provided by my client. This has been fully briefed, so I won't spend a lot of time on it, but it is very clear that the purchase price is not permitted by the statute. There is a vehicle to recover those costs, but it is the fair market value, again, on set dates. No evidence was presented during the trial on the fair market value. That was never determined. Instead, they were given the purchase price. That is not permitted by the statute, and that is very clear just based on the pure language of the statute. So, again, that has been fully briefed. I will leave that with the court, and with what little time I have remaining, unless there are any other questions, I will reserve it for now. All right. Thank you, Counsel. Thank you. Good morning, Your Honors. To please the Court, Jeffrey Miller for Plaintiff, Appellee, and Cross-Appellant Sutter Home Sales and Leasing, Inc. The court focused on a very important point, and that is the dispute that the parties have over what is discontinuation. The BYD takes the position that if you take all four of those acts of a manufacturer that are taken in bad faith, that they all mean that the entire agreement had to have terminated. But one of those terms is continuation, and continuation is not temporal. If they were to say that the contract had to be terminated, then it would make the phrase continuation superfluous. Was there a termination here? There was a termination late in the agreement. Right, but in the relevant time we're talking about. Was the discontinuation a termination? No, it wasn't. It was a discontinuation. The district court found that. What the district court found was that from this period, from August 22, 2018, to February 28, 2019, that BYD had acted in bad faith by denying Sutter Home its rights under this contract, and that the contract was still in full force in effect. See, this is, I think, the problem I'm having with your argument, is that in a general sense we might think of the word discontinuing as covering what happened here. But when you look at the way that this term is used in the statute, you have all these words termination, discontinuation, cancellation, and then they're later shorthanded with the word termination. We look at this and it goes on to say, well, calculate it as of the effective date of the termination. And that's just one example. That's in subsection G, but there's other examples that use termination. And so it does seem to me that when you look at this, it's talking about discontinuation in a more formal sense of ending the agreement, which is obviously not what happened here because the district court found the agreement remained in place. And our position would be that that is misinterpreting the statute because there would be no reason to put the term discontinuation as one of these four factors if it was required that the contract be terminated. It's a bad faith problem, isn't it? Pardon me? Isn't that the whole bad faith issue? The contract was still – they were legally bound, but they stopped performing it. Correct. So that's a discontinuation. I think it would turn the statute on its head because if you were required to have a permanent termination of the agreement, then in order – and acting in bad faith – in order to recover statutory damages, a manufacturer could easily avoid all that, like it did here, where it rescinded its termination and then said, fine, we're just not going to talk to you anymore. We're not going to give you any more information. We're not going to tell you updated pricing. We're not going to give you any statistics on vehicles. We're going to ghost you, basically. They refused to ever communicate with Soderholm again. Under statutory interpretation, each word must be – must have a meaning. Otherwise, there's no reason for the word to be in the statute. Correct. And that's our point, is that why put the word discontinuation in there if the prior word was termination. And they're saying it has to be a termination, so that it not only misconstrues the statute, but it would turn the whole purpose of the statute on its head when the statute is intended to, in part, prevent the overreaching of mainland manufacturers on local dealers. And that that would – that's exactly what occurred here, where they basically just said, well, we're not going to terminate you. We're just going to never talk to you again. Because they had tried to terminate before and did it wrongly. They did it incorrectly. We sent them a letter saying it's all incorrect. They sent us an email back saying, fine, we'll send you a new one shortly. But they didn't. Instead, they just stopped communicating with the dealer for ever again until in late December of 2021, or 2020, they did another termination letter. And this was literally a month before trial. They sent another termination letter that didn't even become effective until a few days after the trial. But at that point, so what the district court found was, in essence, they had discontinued the agreement by its bad faith conduct. And the court recognized it. They said this was bad faith conduct during this term, while at the same time recognizing that the contract was still in full force and effect until that second termination right before trial. Could we move to the issue of statutory damages and what the definition of business is and why the district court appropriately calculated damages based on the value of the overall business?  Happy to, Your Honor. You had pointed to it before, what is the standard of review for damages, which is the calculation of damages is clearly erroneous and not supported by facts. As to the actual statutory damage, that is likely, the statutory term would be de novo. And we recognize that. The statute provides the damages when they have been found in bad faith. And the remedy, the damages are to be calculated by the going value of the business. And our position is that the district court correctly determined the going value of the business by determining what, by looking to the evidence that BYD's expert itself had admitted into evidence. And that was the Soderholm tax returns during the relevant period of time. The district court was not excessive and was very restricted in its damage calculation by only looking at that specific period of time that it deemed BYD to be in bad faith. Counsel, let me ask you this. Are you saying that the district court looked at the experts, the testimony from both experts, which included the entire business as opposed to the single franchise? Did both experts include the amount or the value of the business as a whole, as opposed to the single franchise? Our expert, whom the court declined to rely on, looked at the value of the business as well as the future potential value. When you say business, does that mean all of the franchises or just this? Yes, the business as a whole. And the other expert, what did the other expert do? He didn't render an opinion on what the business value was. All he did was try to poke holes in our expert's report. But as part of doing that, what was admitted into evidence was Soderholm's tax returns for the relevant period of time that they were in bad faith. The district court used that evidence to fashion its own damages calculation. I'm just trying to get to how we review this. In order for us to say that the district court improperly calculated the damages, we'd have to say the district court erred in relying on the evidence that was admitted at trial from the expert. Yes, but that's not completely my point. My point is that the court actually reasonably relied on this expert's report. That's my point, is that in order for us to disagree with the district court, we'd have to say that the district court was unreasonable in relying on that expert opinion. Absolutely. Well, I'm a little confused. As to your expert put in the tax returns? No. Go ahead. It was actually BYD's expert. They submitted, and as part of his expert report, was the tax returns. For your client. For my client. And that included the whole income of the business, the entire business, all the franchise? Correct. Then what did you put in? Our expert, who is a CPA with over 25 years of experience, went through your traditional business valuation analysis, going through all of their records and all of their inventory. That's how they came up with the out-of-pocket figures to calculate what the inventory was worth and fashioned what the going value of the business was, based on the AICPA standards. Was there an objection to that evidence? No, there was not. So it was competing. Well, the objection, in a sense, was that BYD's expert, Mr. Todd, said, no, you've done it wrong. You applied 5% instead of 3% for estimated appreciation, things of that sort. So they were basically trying to say that our expert's report shouldn't be relied upon. And then what the district court did was said, I'm not going to rely on that. There's a simpler way to do it. I'm going to do it myself, using the exhibits that were attached to BYD's expert report, which was Soderholm's tax returns. So was there evidence—the argument that is made here is that the business should be just the value of this particular BYD franchise, which is not worth much. Correct. Was that argument made to the district court? During trial. During trial? No, they argued in their briefs. I do not believe it came out. The trial was very accentuated because we were in the middle of COVID, and so basically each side submitted trial briefs and written testimonies. It was expedited? Yes, expedited. And I do believe that BYD said that you should only look at the business of them selling BYD vehicles. And our position, to the contrary, is one that's too restrictive of a definition of business under the statute. And secondly, it would basically allow BYD to profit from its bad faith because here it prevented Soderholm from selling its buses and then turning around and saying, you didn't suffer any statutory damages because we prevented you from selling our buses. So you had zero damages. And I take it that in going into this relationship in the first place, BYD was looking at the Soderholm business in total and its track record and all of that stuff. Absolutely. That's why they were basically entered into the contract because Soderholm was a successful bus dealer in the state of Hawaii and the South Pacific, and they wanted their brand represented in Hawaii, and they knew that they needed a dealer, a licensed dealer, to sell these buses in the state. So they entered into a contract with Soderholm to do that, and the two parties for the first couple of years actually worked together. Soderholm introduced BYD's sales representative to all of his clients, and they were pitching the sale of buses, and then BYD soured on the agreement and tried to terminate it. Then they rescinded that because they realized it was not a statutorily proper termination. Well, but your client wasn't selling any buses, I take it. No, they had not sold a bus because it takes a matter of years to sell a bus, either privately or through the public procurement process. If there's no more questions, I just wanted to briefly touch on another matter that BYD had to mention. Well, I have a question. Oh, sure. About the purchase price for the SUVs and the forklift. Yes, that's exactly what I was going to get to. The out-of-pocket damages. I think it's very clear that under the law, and I cited the Kanazawa case and others, that for out-of-pocket damages, you calculate them at the time of the purchase of the item, and that it's only if it's in a restitution phase that you actually would go and try and in equity align the value that the purchaser received for that vehicle so you would depreciate it. And I've cited three different cases in our brief that touch on that, and one of them was a decision that the district court judge had opined on. So I think that's very clear. You're saying you don't calculate the depreciation of the items? No, not for out-of-pocket damages. Those are compensatory damages, and so you just look at the cost of the purchase at the time of the purchase. How do you deal with the, again, the language says the dealer's capital investment, and it goes on to talk about value of the business, goodwill, as of the effective date of determination. So why wouldn't we ask for the value at the effective date of determination, whatever that date was? Because both under these cases, even if you look at strategic diversity versus Alcomex, it quotes, when comparing out-of-pocket and rescissionary damages, the fundamental distinctions are these. One, out-of-pocket damages, except the transaction is completed, whereas rescissionary damages attempt to undo it. And two, out-of-pocket damage are measured by reference to the value of the property at the date of the transaction, while rescissionary damages, in order to approximate the undoing of the transaction, take into account the value of the property and any income produced by it after the date of the contract. So the district court looked at that and said, that's the correct date because it's a compensatory damage. If I can move on quickly, we filed a cross-appeal in case the court didn't agree with our positions on the main appeal, and I just wanted to briefly touch on the main point, which was that it's our position that the district court incorrectly limited the time of the bad faith conduct by BYD. The district court said that it went from no later than August 22, 2018, but that it ended in February 28, 2029, when Soderholm filed its initial complaint in this action. And the court didn't say why. 2019? 2019. February 28, 2019. I thought that was when the agreement was properly terminated. No, the agreement wasn't terminated. The notice of termination was December 17, 2020, two years later. So the district court came up with this theory. Well, it's implied because it didn't specifically state that the bad faith ended on February 28, 2029, which is the date Soderholm filed his complaint. 2019. I'm sorry. 2029. I apologize. We're not quite there yet. And we're presuming it because that was the date of filing the complaint. But the court made specific findings that were contrary to that. The court held that in other parts, we'll get there. It held. What's our standard of review on this point? Again, it would be abuse of discretion or clearly erroneous. I think it's clearly erroneous. Because it's a calculation of damages. My point was that while the court picked that date, it also said that it found that BYD did not contact, had no contact with Soderholm after that point. And furthermore, it could be implied that the court believed that Soderholm gave up on its rights under the contract, that it wasn't sending any more of these letters than it had been doing by email, letter, phone call every month saying, hey, talk to us, talk to us. And never getting a response. But the complaint itself, which the court recognized in its findings of fact, had a claim for injunction to prevent BYD from wrongfully terminating the contract. It was also in the prayer of the complaint and the First Amendment complaint. So Soderholm was still standing on its rights, and the court actually recognized that. The Soderholm was still attempting to assert its rights under that contract. But why was it clear error for the district court to conclude at that point that Soderholm was no longer exercising its rights under the contract, but had turned to litigation, and therefore the damages under the contract should end at that point? Why was that clearly erroneous? Because the court recognized that Soderholm was still standing on its rights, and instead of sending emails saying, please talk to me, without any effect, it filed suit to enjoin this bad behavior. It had moved to a different forum for that. Correct. And so why was it clear error for the district court to recognize that it was no longer a contractual dispute, but now it had become a litigation dispute, and therefore the contractual remedies should end at that point? Why was that clear error for the district court to make that call? Because the court should have recognized that Soderholm was still asserting its contractual rights under the contract in the litigation, just as it had been by sending BYD emails saying, you need to talk to us, you need to provide us information. You can walk and chew gum. I mean, you could both go to court and start the courtship. Yes, but in court you were asserting the same position, that you were acting in bad faith by not dealing with us while we have a valid contract, and I want the court to order you to— But that was no longer a purely contractual remedy at that point. You're asking for damages under the law and not just remedy under the contract. And so why couldn't the district court say, at this point, we've segued from contractual remedies to legal remedies? Well, in the complaint, in the first amendment complaint, we inserted both. I understand that, but why couldn't the district court, without being clearly erroneous, choose one path as opposed to the other path? I suppose the court did. Right, and why was that—I'm asking you. You're saying that was clearly erroneous, and I'm asking you why was that clearly erroneous. I understand that you wanted the court to keep both avenues, but why was it clearly erroneous for the district court to select one? Our position is that it's inconsistent with the district court's acknowledgement that we were seeking an injunction and standing on the rights of the agreement, even through litigation. I understand. We understand your argument. All right, rebuttal. Very, very briefly, Your Honors. I will touch on a few things that my co-counsel or my opposing counsel brought up. This idea that I think we've started to discuss of constructive termination or there was somehow something short of a termination that resulted in the agreement being discontinued. I understand the court's position on this. I just want to be clear, that was never anything— We don't have a position. We're just trying to figure out what the law is. I understand the court's questioning regarding that. Just to be clear, that was never alleged in the complaint. That was never tried. The actual allegations and what was tried was actual bad faith termination. So there was some discussion of constructive— Actual bad faith attempted termination? Yes, actual bad faith attempted termination and that resulted in actual termination. The district court found specifically otherwise. I won't get into that again, but as to the three different instances of attempted termination and the actual termination and bad faith in between. But just to be clear, that issue was never before the court below. There was no factual determination that there was some sort of constructive— It's a legal issue, actually. I understood, Your Honor. I'm just saying that those issues were not before the court below and were never tried and were brought up for the first time in the reply brief here today. On the damages, Your Honor asked as far as the valuation and what the experts gave. I'm sorry to go back to you. I just need to follow up with one thing you just said. Your position is that the district court didn't actually make a determination as to whether there was a sort of de facto discontinuation based on the party's course of dealing. You're saying what the district court determined was that the attempted termination was itself an act of bad faith. Is that the position you're trying to make? No. The district court found that the period of bad faith when BYD was not responsive to Soderholm was the bad faith. That was the bad faith. It was the non-responsiveness. During that period, there was the attempted termination, which was rescinded. The district court found specifically that was rescinded and of no legal consequence. That's the court's finding on that. Not a termination. Right. Not a termination of no legal consequence. It doesn't mean it's not a discontinuation, though. Understood, Your Honor. Then the district court specifically found that there was an actual termination that occurred later on that did not include bad faith and was not challenged and was not appealed. With respect to the valuation, BYD's expert did opine on valuation and opined that it was zero. That was before the court, and the district court considered that as far as rejecting Soderholm's expert testimony as to valuation. I want to make that very clear, and I think there was some question as to what the valuation that BYD's expert did offer to the court, and that was confirming just what this court asked. That was the valuation of all of the franchises put together. There was no valuation offered. But are you saying the district court could not rely on that as the valuation? No, I'm saying to clarify the issue, I'm saying there were two valuations offered with respect to the BYD franchise. Our expert offered zero. I don't know whether that was accepted or not. That is in the testimony that was there. Soderholm's expert offered that the value of the BYD franchise was $8 million. That was rejected and not considered by the court and considered speculative. So those were the only two figures given to the actual BYD business, setting aside the argument as to what business. Just for the damages calculation, did the expert opine on the value of the business with all of the franchises? No, the expert merely stated what was in the record, which was Soderholm's tax returns and what they made on all of the businesses put together, which was that $2 million figure. Thank you. All right, thank you to both counsel for your helpful arguments in this challenging case. That completes our calendar for the day. We once again thank the students from Hawaii Pacific and their professor for coming. Our law clerks will be available for the students to talk with after we have adjourned, if you would like to do that. With that, we are adjourned until 9.30 a.m. tomorrow morning. Bearing in mind that the students, the law clerks, can't discuss the cases that you've just heard. Thank you for that caveat. We are in recess until 9.30 a.m. tomorrow morning. Honolulu time. All rise.
judges: SCHROEDER, RAWLINSON, BRESS